Ralph S. Cannon and Helen Cannon v. Commissioner.
Cannon v. Commissioner
Docket No. 4818-63.
United States Tax Court
T.C. Memo 1965-205; 1965 Tax Ct. Memo LEXIS 127; 24 T.C.M. (CCH) 1074; T.C.M. (RIA) 65205; July 26, 1965
Julie M. Reardon and Gene W. Reardon, 2150 First National Bank Bldg., Denver, Colo., for the petitioners. Sidney B. Williams, for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the income tax of the petitioners as follows: Year
Deficiency
1959
$2,453.56
1960
3,158.09
1961
3,441.23
The only issues for decision are whether the petitioners are entitled to deduct, as ordinary and necessary business expenses under section 162(a) and (a)(2), (1) expenditures for meals, lodging and automobile transportation while traveling in Europe during the summer of 1960 principally prior to attending *128 the International Geological Congress, and (2) amounts allegedly paid for entertainment in each tax year. The parties have agreed as to several other issues. Findings of Fact The petitioners, husband and wife, filed their joint income tax returns for the tax years with the director of internal revenue for the district of Denver, Colorado. Ralph was graduated from Princeton University with a BS degree in 1931, received a Master's degree from Northwestern University and, in 1935, a PhD from Princeton University. He specialized in geology. He worked as a geologist at zinc mines near New York City for about 2 years and since then has been employed as a geologist by the United States Geological Survey, a part of the Interior Department, at Denver. He was assigned to the Geochemical Exploration Unit. He has written papers and articles on geology, is well known in his field and is a member of several science organizations. His job during the tax years related to geology and nuclear chemistry and was to plan the research to be done by the Geological Survey to develop new methods of exploring for deposits of ore. His field of research concerns the isotope geological lead, the study *129 of the metal variations of four different kinds of lead atoms in metal materials. One of his activities was to maintain contact with others working in this field throughout the world, know what they are doing and exchange ideas with them. Helen Cannon has been employed as a geologist at the United States Geological Survey, Denver, Colorado, for a number of years prior to, during, and after the tax years. This employment covered a 22-year period. She was assigned the problem of relating botanical features to geology. She belongs to at least three science organizations. She received a BS and a Master's degree and did some work towards a doctor's degree in connection with her study of geology. She has written and published articles in her field of work and is highly regarded for her knowledge of the relationships between trace elements in rocks and their relationship to vegetation and human health. She confers with others in her field. Absence for 30 days without being charged to annual leave was approved by government authority for the petitioners to permit them to attend the 1960 International Geological Congress in Copenhagen, Denmark, in an unofficial capacity and at their own *130 expense. The rest of their trip in Europe was not made on any government authorization but was made entirely on their own decisions. The evidence does not show that they had made any appointments before leaving home, to meet anyone in Europe. The Congress began on August 14, 1960, and ended on August 28, 1960. The petitioners left Denver on June 3, 1960, boarded a ship in Florida, and arrived in Lisbon on June 16, 1960. They boarded a ship in Copenhagen on September 7, 1960, and arrived in New York on September 16, 1960. No expenses after September 16, 1960, are involved herein. The petitioners on their 1960 return claimed a deduction of $4,861.65 for "Scientific Meetings, in Denver, Vancouver, and Europe" consisting of the following: Fares and Registrations
$1,692.85
Board, Room and Incidentals
2,490.00
Auto
678.80
The Commissioner, in determining the deficiency for 1960, disallowed the deduction "because you have failed to substantiate that such amount was expended for the purposes designated, or that you are entitled to claim the deduction." The petitioners' 20-year-old daughter accompanied them on their European trip except that she was in Switzerland *131 during the 14 days they attended the Congress. The petitioners upon arrival in Lisbon purchased a small station wagon automobile "and spent a day or so there, getting the car through customs, and getting started" on their trip. They used the car for their travels in Europe and brought it home with them. They went from Lisbon to a uranium mine at Urgeririca, Portugal, and spent 2 days with two geologists on the mine staff studying the mine and environs. Ralph collected uranium and lead samples later sent to Denver for study. Helen collected for study samples of vegetation growing over the body of uranium. They went from Urgeririca to Madrid on June 23. Ralph went there to see the only Spanish geologist in his field, but the record does not show whether or not Ralph saw him. They left on the 23rd for zinc mines in northern Spain where they had difficulty talking to the staff due to language barriers, but Ralph collected some lead samples for future study in Denver. They then went to southern France, were delayed by car trouble, arranged with our Consul at Nice to pack and ship the collected samples and then continued through northern Italy to Bern where Ralph visited for 2 days *132 with the director of the physical institute of the University and members of his staff who showed him their equipment and work. He also conferred there with an outstanding scientist in lead isotopology. They went from Bern on July 10 to Heidelberg where they apparently failed to see Dr. Wolfgang Gentner, a physicist. They went on July 12 to the Max Poanck Institute at Mainz. Ralph visited there with a professor who had trained a laboratory technician employed by Ralph in Denver. They went on July 13 to the University of Bonn where Ralph visited an outstanding mass spectrometrist. They went on July 14 to Auchen, Belgium, where they visited zinc mines and each petitioner separately collected samples for later study. Also that day Ralph visited a museum at Tervenren and conferred with the assistant director, in the absence of the director [*] whom he later corresponded. The served on the evening of July 14 at [*] laboratory of the Free Univer city of Brussels, conferred with staff [*] one of whom took them to see her home. They were in Paris from July 15th to the 18th. There they went separate ways. Helen conferred with Dr. Arnold Grimbert at the French Atomic Energy Commission *133 laboratories. She had shown him uranium mines while he was in Colorado and he showed her the work being done by France, including his recording and codifying analyses of uranium from all sources. Ralph visited the French equivalent of our Bureau of Standards. He had once corresponded with scientists there and sent them lead samples to analyze the isotopic qualities by their method. He was to learn whether they could build a machine for use in Denver but the cost was prohibitive. They gave Ralph some parts of one of their machines to take home. They went from Paris to Dover, England on July 18th and on to Kensington in London where they were from the 21st to the 23rd of July. Helen visited Dr. John Webb who was in charge of and showed her the Geochemical Exploration Laboratory of the Royal School of Mines of London. He had been in the United States and was familiar with Helen's work. He went over with her the manuscript of a text book on Geochemical Exploration of which he was co-author and which was later published. Both petitioners were shown the laboratory and an automatic analyzer of a kind not available in the Denver laboratory. They next went to Oxford. A scientist Ralph hoped *134 to see while there "had just left town." Ralph, while at Edinburgh, talked on the telephone to a leading geologist, aged 76, who was not allowed to have visitors following a heart attack. They talked briefly about lead isotope research. The petitioners sailed from Newcastle, England, on August 3rd and arrived at Bergen, Norway. They went next to Leon, Norway, where they spent a day at the Bryksdal Glacier, their first visit to an active glacier. They went from Leon to Copenhagen and attended the 21st Session of the International Geological Congress which ran from August 14th to August 28th. Ralph, while there, visited the home office of the Danish company, which mines cryolite, a mineral used in the manufacture of aluminum, but did not see their chief geologist. Ralph, between the close of the Congress and sailing for New York, learned of a breed of horses in Denmark and spent some time to learn whether he could import some of them to improve the Appaloosa strain in Colorado. He also tried again, without success, to see the Chief Geologist of the cryolite company. He left a letter for him and later received some samples which this man sent to him in Denver. It is not necessary *135 or usual for a geologist employed by the United States Geological Survey in Denver to go to Europe to obtain specimens for study. The record does not show whether the route the petitioners followed in Europe was planned ahead and, if planned, what the plan was. The record does not show what interest, if any, the daughter had in geology or any matter pertaining thereto. It does not show how she spent her time in Europe except that she went to Switzerland during the time that the Congress was in session. The record does not show how the total number of miles traveled by automobile was determined. The record does not show what amounts, if any, Ralph spent entertaining anyone during any tax year or that he paid for entertaining any ordinary and necessary expense of a business of his. The Commissioner, in determining the deficiency for each year, disallowed an amount claimed on the return for professional entertainment because of failure to substantiate the right to such a deduction. All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner determined that the amounts deducted on the 1960 return on account of the European trip *136 taken by the petitioners were not ordinary and necessary expenses of their businesses so as to be deductible under section 162(a)(2). He later conceded in his brief herein that their expenses of travel to and from Europe and their subsistence during the 14 days of the International Geological Congress in Copenhagen may be deducted under that section. He has not indicated any amount for such a deduction. This leaves the petitioners with the burden of proof to show that all, or what part, of their remaining expenditures were ordinary and necessary expenses of their businesses deductible under section 162(a)(2). The decision of whether an expenditure is or is not an ordinary and necessary expense of a business must be made by the Court and must be based upon evidence in the record as to the amount and purpose of the expenditure. It may not be based upon an opinion of a petitioner as opposed to evidence of facts upon which the Court can reach its own opinion of deductibility. The two petitioners and their 20-year-old daughter left their home in Colorado, on June 3, 1960, sailed from Florida and landed in Lisbon, Portugal, on June 16, 1960. They sailed for home from Copenhagen on September 7, 1960. The *137 record indicates that the trip ended on September 16, 1960, in New York. Fourteen days were spent at the International Geological Congress. They were in Europe for 84 days, thus the amount and purpose of their expenditures made during 70 of those days are the questions for decision. Helen did not testify. Ralph testified as to the route they followed and as to some things they did on 15 of those 70 days. He described some activity of his own on most of those 15 days which he claims was related to his business. However, on only a few of those days does he describe any activity of his wife, which would seem to relate to her business as opposed to his. She was with him on most of the days on which he described his activities. The principal purpose of their trip to Europe was to attend the International Geological Congress in Copenhagen and the Commissioner has conceded that the expenses of their travel to and from Europe and their expenditures for subsistence, that is, board and lodging together with a few other fee-type expenditures while at the Congress, are deductible under section 162(a)(2). They argue that the Commissioner has thus conceded that the principal purpose of their *138 trip to Europe was for business purposes and therefore all of their expenditures are deductible. This does not necessarily follow. Obviously, if they had spent all of their time merely sightseeing in Europe except for the 14 days of the Congress, they would be entitled to deduct only whatever amount the Commissioner is conceding. Their businesses or professions are, to a non-geologist at least, quite technical and it is not easy to determine from Ralph's testimony as to his activities on 15 days whether or not he was doing something connected with his business on each of those days. It is even more difficult in the case of Helen to determine when she was engaged in business activities. One of the items which the petitioners claim is deductible is based upon automobile travel for 6,788 miles at a cost of 10 cents a mile. The evidence does not show how the petitioners determined that they traveled 6,788 miles or what traveling that far by a small automobile in Europe would cost per mile. The petitioners claim that they spent some total amount for meals and lodging while they and their daughter were in Europe. They did not produce or keep adequate records for any of their board, lodging, *139 or automobile expenditures. Different currencies were involved. Ralph estimated in some way the total amount, expressed in dollars, spent for those purposes and then subtracted some portion as applicable to his daughter. How he did this is not at all clear. The record does not justify a finding as to the total amount spent for Ralph's meals or lodging, for Helen's meals or lodging or for the daughter's meals and lodging. Nor does it justify a finding of the total amount spent for Ralph's meals and lodging, for Helen's meals and lodging, or for the meals and lodging of both during the whole or any part of the trip. The record does not indicate any proper amount to represent the additional costs of the trip occasioned by the presence of the daughter. No effort was made to prove in any detail facts which might assist the Court in determining any of these essential amounts. Admittedly, some expenditures were made for nondeductible purposes and the amount of these is not clear in the record, nor is it clear that they have been properly excluded from Ralph's computations. Despite many weaknesses in the evidence it does indicate that some of the travel through Europe was for the purpose *140 of gaining benefits related to the business of Ralph and, to a lesser degree, for the purpose of gaining information related to the business of Helen. The amounts expended for these purposes is not determinable from the record. Therefore, the principal of has been applied, and it is thus determined that a deduction of $1,000 is allowed in this connection for board, lodging, and automobile expenditures. This is in addition to whatever amount the Commissioner has conceded. Decision will be entered under Rule 50.